# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARK MILLER (#473135)**                                    **CIVIL ACTION**

**VERSUS**

                                                             **17-1677-BAJ-RLB**

**DR. PREETY SINGH, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the

Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served

with the attached Report to file written objections to the proposed findings of fact, conclusions of

law and recommendations therein. Failure to file written objections to the proposed findings,

conclusions, and recommendations within 14 days after being served will bar you, except upon

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE

WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 3, 2019.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARK MILLER (#473135)                                    CIVIL ACTION

VERSUS

                                                         17-1677-BAJ-RLB

DR. PREETY SINGH, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Motion to Dismiss filed on behalf of defendants

James LeBlanc, Tim Hooper, Wanda Dupuy, Dr. Matthew Gamble, Gregory Polozolo, and Dr.

Casey McVea (R. Doc. 13).  The motion is opposed.  *See* R. Doc. 20.

The *pro se* plaintiff, an inmate now confined at Allen Correctional Center ("ACC"),

Kinder, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 and the Americans With

Disabilities Act, 42 U.S.C. § 12101, et seq. (" ADA" ) against Dr. Preety Singh, Warden Tim

Hooper, Nurse Wanda Dupuy, Gregory Polozolo, Dr. Raman Singh, Secretary James LeBlanc,

Dr. Matthew Gamble, Dr. Bickham, and Dr. Casey McVea complaining that his constitutional

rights were violated due to deliberate indifference to his serious medical needs.[1]  He prays for

monetary and declaratory.

Defendants Hooper and LeBlanc first seek dismissal on jurisdictional grounds, pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's § 1983 claims against

---

[1] As to defendants Dr. Bickham and Dr. Raman Singh, a review of the record reveals that these defendants have not
been served because they are no longer an employed by the Department of Corrections. *See* R. Doc. 9.  Pursuant to
the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of
commencement of an action is cause for dismissal of that defendant from the proceeding.  Although a *pro se*
plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service
and should attempt to remedy any defects of which he has knowledge.  The plaintiff was informed of the lack of
service and failed to take action to direct service on defendants Dr. Bickham and Dr. Raman Singh for 7 months.
*See* R. Doc. 9.  It is appropriate, therefore, that the plaintiff's claims asserted against defendants Dr. Bickham and
Dr. Singh be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.

them in their official capacities.  In this regard, the defendants are correct that § 1983 does not

provide a federal forum for a litigant who seeks monetary damages against either a state or its

officials acting in their official capacities, specifically because these officials are not seen to be

"persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S.

58, 71 (1989).  In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme

Court addressed the distinction between official capacity and individual capacity lawsuits and

made clear that a suit against a state official in an official capacity for monetary damages is

treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id*. at 25.

Accordingly, the plaintiff's § 1983 claims asserted against the defendants in their official

capacities, for monetary damages, are subject to dismissal.  In contrast, the plaintiff's claims for

monetary damages asserted against the defendants in their individual capacities remain viable

because a claim against a state official in an individual capacity, seeking to impose personal

liability for actions taken under color of state law, is not treated as a suit against the state.  *Id*. at

29.  The plaintiff's claims for declaratory relief asserted against the defendants in their official

capacities also remain viable because such a claim is not treated as a claim against the state.  *Will

v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh

Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to

survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must

be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*,

*supra*, at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

*supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*.  It follows that, "where the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*.

at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678

(internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must

accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551

U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a

*pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers.'" *Id*. (citation omitted).  Notwithstanding, the court need

not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265,

286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement."

*Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that he suffers from Attention Deficit Hyperactivity

Disorder ("ADHD") and hearing impairment.  On June 19, 2016, the plaintiff submitted a Health

Care Request Form requesting treatment for tinnitus in both ears and the inability to hear.  The

plaintiff's request was not addressed.  On August 8, 2016, the plaintiff submitted a Request for

Administrative Remedy ("ARP") to defendant Hooper concerning malicious deprivation of

appropriate treatment for his ADHD and hearing impairment, and refusal to provide medically

prescribed treatment for neck, shoulder and wrist injuries.  On August 30, 2016 the plaintiff's

ARP was denied at the first step by defendant Polozolo.  On September 4, 2016, defendant

Dupuy responded to the plaintiff's ARP stating that the plaintiff's health care request was

concerning noisy fans in the plaintiff's housing unit.  Defendant Dupuy also stated that an

appointment scheduled for August 19, 2016 was cancelled due to major flooding and was

rescheduled 72 hours later.  On November 4, 2016, the plaintiff's ARP was denied at the second

step by defendant LeBlanc.

Subsequently, defendant Dr. Preety Singh denied the plaintiff adequate assistance with

his ADHD by failing to issue the plaintiff a duty status properly identifying medical restrictions

necessitated by his special needs.  The plaintiff was then subjected to "diesel therapy" and was

transferred to another prison facility.  Upon his arrival at Dixon Correctional Institute, the

plaintiff informed the staff of his medical needs, but experienced difficulty receiving treatment

due to the lack of properly issued medical prescriptions.  All of the defendants colluded to

deprive the plaintiff of adequate medical care by denying him medical attention, treatment,

interfering with prescribed treatments and retaliating against him for filing an ARP.

In order for there to be liability in connection with a claim of deliberate medical

indifference, an inmate plaintiff must allege that appropriate medical care has been denied and

that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).

Whether the plaintiff has received the treatment or accommodation that he believes he should

have is not the issue.  *Estelle v. Gamble*, *supra*.  Nor do negligence, neglect, unsuccessful

treatment, or even medical malpractice, give rise to a § 1983 cause of action.  *Varnado v.*

*Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).  As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.  Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

The Court finds that the plaintiff has failed to allege sufficient personal involvement on the part of defendants Hooper, Dupuy, Polozolo, LeBlanc, Dr. Gamble, and Dr. McVea.  In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 F.

App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

The plaintiff has made no allegations of personal involvement on the part of aforementioned defendants with regards to his medical care. Rather, the plaintiff complains about the handling of his ARP and makes a conclusory allegations of collusion. Accordingly, the plaintiff's deliberate indifference claims against defendants Hooper, Dupuy, Polozolo, LeBlanc, Dr. Gamble, and Dr. McVea should be dismissed.

The plaintiff does make an allegation of personal involvement on the part of defendant Dr. Preety Singh. With regards to the plaintiff's claim against defendant Dr. Singh for failure to issue an appropriate duty status, the aforementioned deliberate indifference standard applies. In his Opposition, the plaintiff notes that his Complaint needs to be amended. (R. Doc. 20). Accordingly, the plaintiff should be allowed to amend his Complaint with regards to his claim against Dr. Preety Singh for failure to issue an appropriate duty status.

To the extent the plaintiff is asserting that the defendant's conspired to deprive him of medical treatment, mere conclusory allegations of a conspiracy to violate the plaintiff's constitutional rights are not cognizable under § 1983. *See Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986); *Decker v. Dunbar*, 633 F. Supp. 2d 317, 358 (E.D. Tex. 2008).

With regards to the handling of his ARP, the plaintiff does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id.* at 373-74.

Turning to the plaintiff's claim he was transferred to another prison facility in retaliation for the grievance filed in August of 2016, it is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Woods v. Smith, supra*, 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell, supra*, 449 F.3d at 684. *See also Hart v.*

*Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.

1999).  An inmate must allege more than his mere personal belief that he is the victim of

retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of

retaliation are not favored, it is Plaintiff's burden to provide more than conclusory allegations of

retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the
> retaliatory motive the complained of incident ... would not have occurred.  This places a
> significant burden on the inmate....  The inmate must produce direct evidence of
> motivation or, the more probable scenario, allege a chronology of events from which
> retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

Undertaking the foregoing analysis, the Court finds that there is chronology of events

from which a retaliatory motive may logically be inferred; however, the plaintiff has not alleged

personal involvement on the part of any named defendants.  As previously noted, the plaintiff is

aware that his Complaint needs to be amended.  Accordingly, the plaintiff should be allowed to

amend his Complaint with regards to his claims of retaliation.

With regards to the plaintiff's ADA claim, to whatever extent, if any, that the defendants

are being sued in their individual capacities, the plaintiff's ADA claims against them must be

dismissed.  The Supreme Court in *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10

(1998), recognized that state prisoners may bring claims against their jailors for disability

discrimination under Title II of the ADA, which prohibits discrimination by public entities.  The

term "public entity" in Title II does not include individuals; therefore, individual defendants

cannot be held personally liable for violations of Title II of the ADA.  *Walker v. Snyder*, 213

F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531

U.S. 356, 374 n. 9 (2001), *as stated in Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

Finally, as to any official capacity claims the plaintiff may be asserting against the defendants under the ADA, the Court finds that the plaintiff has failed to allege facts that state a cause of action under this statute.  "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"  *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999).  Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'"  *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).  Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates."  *Id.* at 213.

Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination."  *Delano- Pyle v. Victoria County, Texas, supra*, 302 F.3d at 574.  Accordingly, the plaintiff is not entitled to the punitive damages requested in his Complaint.

In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

The plaintiff's allegations in the instant case do not meet this 3-part test *vis-a-vis* the defendants. The plaintiff does not assert that he was excluded from participation in or denied the benefits of any prison services, programs or activities. The plaintiff does not allege that he is being discriminated against in any manner, much less by reason of his disability. To the contrary, the plaintiff's allegations concern failure to attend to his medical needs, which does not alone violate the ADA. *See Nottingham v.. Richardson,* 499 F. App'x. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners' "); *Hay v. Thaler,* 470 F. App'x. 411, 418 (5th Cir. 2012) (finding no ADA violation where the plaintiff complained that prison officials refused to provide him with dentures but where the plaintiff made no showing that the refusal was "by reason of his disabilities"). Accordingly, the Court recommends that the defendants' Motion be granted as to the plaintiff's ADA claim, dismissing the claim, with prejudice, for failure to state a claim upon which relief can be granted.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over

which the district court has original jurisdiction, if the district court has dismissed all claims over

which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the

instant case, given the Court's recommendations, the Court further recommends that the exercise

of supplemental jurisdiction be declined as the plaintiff's state law claims would substantially

predominate over the claims over which the district court has original jurisdiction.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's claims against

defendants Dr. Bickham and Dr. Raman Singh be dismissed, without prejudice, for failure to

timely serve these defendants in accordance with Federal Rule of Civil Procedure 4.  It is further

recommended that the defendants' Motion to Dismiss (R. Doc. 13) be granted in part, dismissing

all of the plaintiff's claims with prejudice except the plaintiff's retaliation claim and claim for

deliberate indifference asserted against Dr. Preety Singh.  It is further recommended that the

plaintiff be allowed 21 days to amend his Complaint in regard to the remaining claim of

retaliation, and his claim for deliberate indifference asserted against Dr. Preety Singh.  It is

further recommended that the Court decline the exercise of supplemental jurisdiction in

connection with the plaintiff's potential state law claims, and that this matter be referred back to

the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on January 3, 2019.


_____
        **RICHARD L. BOURGEOIS, JR.**
        **UNITED STATES MAGISTRATE JUDGE**